Thomas Arthur SMITH and Josephine Marie Smith, Plaintiffs-Respondents,

v.

R. G. ALDRIDGE, d/b/a Aldridge Construction Company, Defendant-Appellant.

No. 30776.

St. Louis Court of Appeals.

Missouri.

April 17, 1962.

Motion for Rehearing or for Transfer to Supreme Court Denied May 15, 1962.

Carstarphen & Harvey, Harry Carstarphen, Hannibal, for defendant-appellant.

Rendlen & Rendlen, Hannibal, McIlroy & Millan, James Millan, John M. McIlroy, Bowling Green, for plaintiffs-respondents.

DOERNER, Commissioner.

This case recently came to the writer by reassignment. Plaintiffs, husband and wife, were the owners of a house and lot in Hannibal, Missouri, numbered 3412 Navajo Street. Defendant, a contractor, constructed a part of Highway 36 over Navajo Street, in front of and adjoining plaintiffs' property, during the course of which defendant used explosives to remove rock and debris. The case was tried on plaintiffs' second amended petition, which contained three counts. In Count I, plaintiffs sought recovery of $6,500 for actual damages to their improvements and land allegedly due to vibration and to rocks and debris being cast thereon by defendant's blasting, as well as punitive damages of $10,000. In Counts II and III, plaintiffs Thomas Arthur Smith and Josephine Marie Smith prayed for damages of $1,000 and $5,000, respectively, for mental pain and anguish each claimed to have suffered by reason of the blasting. Verdict and judgment below was for plaintiffs on Count I for actual damages of $3,500; for defendant, on Count II; and for plaintiff Josephine Marie Smith for $1,300 on Count III. After his post-trial motions proved unavailing, defendant appealed.

Neither the contract between defendant and the State Highway Commission, nor the plans and specifications for the work to be done pursuant thereto, were introduced in evidence and hence are not before us. It appears from the record, however, that part of the work undertaken by defendant involved the making of a cut 350 feet wide and 35 feet deep through dirt and rock, on the right-of-way adjoining plaintiffs' property. Plaintiffs introduced substantial evidence that the blasts set off by defendant occurred frequently during the months of January, February, March and April, 1959, and at varying times during the day; that on occasion defendant would warn plaintiffs before the explosives were detonated, but that often no warning would be given; that in addition to the resulting noise and concussion, the blasts caused vibrations to occur which jarred and shook plaintiffs' home; that the blasts also caused rocks, some as large as a football, and other debris to be thrown onto the plaintiffs' property and against the improvements thereon; and that the damage to plaintiffs' home and improvements resulting from the blasts included cracks in the ceiling, floors, walls and foundation, broken shingles and a trellis, holes through the garage roof and through the storm door and the front door, bricks knocked off the chimney, and the littering of plaintiffs' land. Defendant's evidence was that the amount of explosives used could not have caused any vibration sufficient to have shaken plaintiffs' house and that any damage claimed to be due to

such a cause was the result of poor construction of the structure. Defendant also introduced evidence that pole mats were used to prevent rocks and debris from being thrown by the explosives, but its own evidence revealed, inferentially at least, that such means of prevention was not wholly successful, and plaintiffs showed that they were quite ineffectual. Additional facts will be stated in connection with the matters raised by defendant on appeal.

■ In his brief defendant has enumerated seven principal points relied on, each of which, in turn, is subdivided in from two to five subpoints. Faced with the task of reviewing this plethora of alleged error, it may be helpful to state at the outset some of the principles of law applicable to actions involving explosives. In this state " * * * blasting is regarded as a work which one may lawfully do, providing he avoids injuring persons or property, and subject to his obligation to pay damages for any injury inflicted by his blasting. * * *" Schaefer v. Frazier-Davis Const. Co., Mo.App., 125 S.W.2d 897, 898. The cases from other jurisdictions are not in harmony on the question of liability for property damage from concussion or vibration resulting from blasting. In some it is held that liability depends on whether the defendant was negligent. Booth v. Rome, W & O. T. R. Co., 140 N.Y. 267, 35 N.E. 592, 24 L.R.A. 105. In other states the rule of absolute liability is followed, and it is held that the defendant is liable for damage to the plaintiffs' property caused by concussion or vibration, irrespective of negligence. Wendt v. Yant Const. Co., 125 Neb. 277, 249 N.W. 599; Watson v. Mississippi River Power Co., 174 Iowa 23, 156 N.W. 188, L.R.A.1916D, 101. Where, however, the injury to plaintiffs' premises results from rocks and debris thrown thereon by the blasting, it is generally held, even in those states requiring negligence to support a recovery for concussion or vibration, that a trespass results for which there is liability, regardless of negligence. This distinction in such jurisdictions appears to be based on the historical difference between actions on the case and trespass, 20 A.L.R.2d 1372, and has been sharply criticized by many courts which have adopted the rule of absolute liability. Wendt v. Yant, supra; Watson v. Mississippi River Power Co., supra.

■ While there seems to have been some doubt on the part of the courts in the early cases in Missouri as to whether it was necessary to prove negligence to warrant a recovery for personal injuries from blasting, Hoffman v. Walsh, 117 Mo.App. 278, 93 S.W. 853; Knight v. Donnelly, 131 Mo.App. 152, 110 S.W. 687, from the first case in this state involving damages from vibration, Faust v. Pope, 132 Mo.App. 287, 111 S.W. 878, our appellate courts have uniformly held that " * * * when damage to property is by vibration or concussion from blasting there is an invasion of the premises and liability irrespective of negligence quite as if the blasting had cast rocks or debris thereon. * * *" Summers v. Tavern Rock Sand Co., Mo., 315 S.W.2d 201, 203. And see Stocker v. City of Richmond Heights, 235 Mo.App. 277, 132 S.W.2d 1116; Taylor v. Walsh, 193 Mo. App. 516, 186 S.W. 527; Johnson v. Kansas City Terminal R. Co., 182 Mo.App. 349, 170 S.W. 456.

■ With these rules in mind, we turn to an examination of the matters assigned as error by the defendant. Reviewing them in the chronological sequence in which they occurred, rather than in the order followed in the brief, the first matter for consideration is defendant's complaint that the court erred in striking from his answer, on motion of plaintiff, what defendant denominates as his defense of "contractor-government immunity." The allegations regarding the claimed defense of immunity are much too lengthy and verbose to be quoted herein. It is sufficient for our purpose to say that the substance of defendant's plea, and the tenor of

his argument on appeal, is that the State Highway Commission would have been immune from any liability for the damage suffered by plaintiffs had it undertaken the construction of the highway; and that the immunity which the State Highway Commission would have enjoyed under such circumstances extended to the defendant in carrying out his work for the Commission. The premise that the State Highway Commission would not be subject to liability for the tortious acts of its agents and employees in constructing the highway may be conceded. Bush v. State Highway Commission of Missouri, 329 Mo. 843, 46 S.W.2d 854; Broyles v. State Highway Commission of Missouri, Mo.App., 48 S.W. 2d 78; Rector v. Tobin Construction Co., Mo.App., 351 S.W.2d 816. Those cases are based on the doctrine that the State of Missouri is not subject to tort liability without its consent, and that the State Highway Commission, as a subordinate branch of the executive department, is therefore immune. But the defendant is neither the State nor the State Highway Commission, and it does not follow as a matter of course that he is absolved from all liability merely because the work in which he was engaged was performed pursuant to a contract with the Commission.

In support of his claim of immunity defendant relies principally on the cases of Nelson v. McKenzie-Hague Co., 192 Minn. 180, 256 N.W. 96, 97 A.L.R. 196, and Pumphrey v. J. A. Jones Const. Co., 250 Iowa 559, 94 N.W.2d 737. When carefully considered it is apparent that neither case is in point. The cause of action in Nelson v. McKenzie-Hague Co., was predicated on a statute defining a private nuisance. As stated by the court, the precise point presented in Pumphrey v. J. A. Jones Const. Co., 94 N.W.2d 739, was:

"The narrow question before us is whether the independent contractor is entitled to share the immunity of the sovereign with which he has contracted

if he carries out his operations in accordance with the terms of the agreement and without negligence, even though the procedures required by the contract and approved by the government may result in incidental damage to third persons. * * *"

In the instant case defendant did not plead that his contract with the State Highway Commission made it mandatory upon him to use explosives. Nor did he allege that the manner in which he employed the explosives was in strict accordance with the terms of the contract or at the specific directions of the Commission's engineer, with whose orders he was required to comply, as in Evans v. Massman Const. Co., 343 Mo. 632, 122 S.W.2d 924. All that defendant alleged in the instant case was that the use of explosives was "the only way known to man" to remove the rock, and that the blasting was done under the supervision and inspection of the authorities for the highway. At best this was but an allegation that the authorities permitted the use of explosives, not that they required it or directed the manner of its employment.

■■ The freedom from liability which protects the State Highway Commission from liability for the tortious acts of its agents and servants does not exempt the individual agent or servant from legal responsibility for his misconduct. Rector v. Tobin Const. Co., Mo.App., 351 S.W.2d 816. Similarly, it was held in State ex rel. State Highway Commission v. Riggs, 226 Mo.App. 1053, 47 S.W.2d 178, that the contractor, and not the Commission, was responsible for damage to a septic tank resulting from the negligence of the contractor in blasting. This accords with the general rule. 40 C.J.S. Highways § 212, p. 208. As stated in 43 Amer.Jur., Public Works and Contracts, Sec. 82, p. 825:

"Whatever immunity the state or its political subdivisions and other public bodies may enjoy from liability for

negligence in the performance of public work when the work is actually prosecuted by its agents and employees does not extend to private contractors who have contracted with public authorities for the construction of public work or public improvements, and such contractors are liable to third persons for injuries proximately resulting from negligence in the performance of the work contracted for. Liability in such case is based not upon the contract with the public authorities or upon a failure to perform the work in accordance with that contract but upon the contractor's negligence and the tortious breach of duty imposed upon him by common law."

In support of this rule see the later Iowa case of Monroe v. Razor Const. Co., 110 N.W.2d 250. If governmental immunity does not insulate from liability a contractor who negligently injures property, as the authorities hold, we see no valid reason why it should immunize a contractor when the damage to the property is caused by his unauthorized invasion or trespass through blasting. Scranton v. L. G. De Felice & Son Inc., 137 Conn. 580, 79 A.2d 600; Whitney v. Ralph Myers Contracting Corp., W.Va., 118 S.E.2d 622. We hold that the trial court did not err in striking from defendant's answer the alleged defense of immunity.

▆ In the course of the voir dire examination by plaintiffs' counsel, and further questions by the court, venireman Brown indicated a doubt as to his qualifications to serve as a juror because his company, not named, had other claims pending arising out of defendant's blasting, which from a subrogation standpoint might be affected by the outcome of the case on trial. Plaintiffs' counsel then asked that the venireman be excused, and the court inquired of defendant's counsel whether he had any objection. Defendant's counsel replied: "Objection goes to the entire controversy;

and we ask that the entire panel be discharged, and that it be declared a mistrial because of this controversy." The court thereupon overruled the motion, and excused Brown. Defendant now complains on appeal that the court erred in refusing to discharge the panel because Brown's statement that other claims were pending and would be affected by the instant case prejudiced the prospective jurors. We have some doubt that a motion to discharge the panel because of "this controversy," in the light of Brown's answers, is sufficient to encompass the alleged error now raised on appeal. In any event, the disqualification of an individual venireman for bias or the expression of an opinion is normally not a sufficient ground for a challenge of the entire panel. State v. Weidlich, Mo., 269 S.W.2d 69. The declaration of a mistrial and the quashing of the panel is largely a matter within the discretion of the trial court, because it is in a better position to gauge the effect on the panel of the matter claimed to be prejudicial. State v. Taylor, Mo., 324 S.W.2d 643, 76 A.L.R.2d 671; State v. Weidlich, supra; State v. Hawkins, 362 Mo. 152, 240 S.W.2d 688. It cannot be said that the trial court abused its discretion in the instant case.

▆ Defendant's next contention concerns a deed, dated February 26, 1959, whereby in consideration of the sum of $1500 plaintiffs conveyed to the State Highway Commission their interest in Navajo Street, on which their property fronted and which was included in the right-of-way for the improvement of Highway 36. It was recited in the deed that the plaintiffs further granted to the Commission the right and privilege to alter and change the grade of said Navajo Street, and that plaintiffs received the $1,500 "as full compensation for any damage which may result to our property as a result in the changing of the grade of said street and that we shall not make any claim for any further compensation as a result of

such change in grade." Defendant argues that the consideration paid by the State Highway Commission for the deed was the equivalent of the payment of damages in a condemnation proceeding, and that the court therefore erred in not ruling as a matter of law " * * * that the plaintiffs had been fully compensated for all consequential damages by reason of the deed * * *." Defendant misconstrues the deed. Granting that the consideration paid by the State Highway Commission may have included the consequential damages to plaintiffs' property resulting from the change of the grade of Navajo Street, the damages which plaintiffs seek to recover from defendant are not "consequential damages" as that term is employed in the law of eminent domain. Laclede Gas Co. v. Abrahamson, Mo., 296 S.W.2d 100, 61 A.L.R.2d 1286; State ex rel. N. W. Electric Power Cooperative, Inc. v. Waggoner, Mo.App., 319 S.W.2d 930. The damages claimed by plaintiffs were not for injuries which resulted from the change of grade per se, but for the tort committed by defendant in the course of building the highway. The deed did not release defendant from liability for such misconduct. State ex rel. State Highway Commission v. Riggs, supra; Chapman v. St. Louis Belt & Terminal R. Co., 240 Mo. 592, 144 S.W. 469.

▇ Another assignment of error is that the court erred in overruling defendant's motion for a directed verdict on Count I at the close of all the evidence. The argument advanced is that the cause of action pleaded by plaintiffs in that Count was for malicious, wilful and wanton acts of the defendant, and that there was no evidence that defendant's acts were of that character. Defendant is mistaken in his interpretation of plaintiffs' petition. What plaintiffs did in Count I was to first plead a cause of action based on defendant's liability for the damage resulting from defendant's blasting, irrespective of

his negligence, in accordance with the rule announced in Summers v. Tavern Rock Sand Co., supra, and Schaefer v. Frazier-Davis Const. Co., supra, for which they prayed actual damages of $6,500. In the concluding paragraph of that Count they also alleged that the defendant's acts in blasting were so wanton and malicious, and carried out with such a complete disregard of the consequences, known or which could have been known to defendant, that he should be penalized; and plaintiffs prayed for punitive damages of $10,000. There was an abundance of evidence to sustain plaintiffs' claim that their property was damaged by the explosives used by defendant, and the court therefore did not err in overruling defendant's motion. The question of whether there was sufficient evidence that the defendant acted maliciously, wilfully and wantonly is subsequently discussed, but as to Count I defendant can have no valid complaint on that score because the jury found the issue in his favor and did not return a verdict for punitive damages.

▇ In Count III of the petition plaintiff Josephine Marie Smith alleged that defendant's acts in blasting were done in a malicious, wanton and inhuman manner, causing her great worry about the safety of her children and herself, and mental pain and anguish. As to this Count, defendant contends that no cause of action was stated because in the absence of a physical injury there could be no recovery for mental pain and anguish. Defendant relies on the general rule, but ignores the exception to the rule. As stated in Trigg v. St. Louis, K. C. & N. Ry. Co., 74 Mo. 147, 153, cited by defendant, " * * * The general rule is that 'pain of mind, when connected with bodily injury, is the subject of damages; but it must be so connected in order to be included in the estimate, *unless the injury is accompanied by circumstances of malice, insult or inhumanity.' * * *"* (Emphasis supplied.)

A similar statement as to the general rule and the exception appears in Gambill v. White, Mo., 303 S.W.2d 41, 43. Under the exception to the general rule damages for mental pain and anguish have been allowed where the defendant's misconduct was malicious, wilful or wanton, even though no physical injury occurred. Ackerman v. Thompson, 356 Mo. 558, 202 S.W. 2d 795; Crenshaw v. O'Connell, 235 Mo. App. 1085, 150 S.W.2d 489; Wilson v. St. Louis & S. F. R. Co., 160 Mo.App. 649, 142 S.W. 775; Voss v. Bolzenius, 147 Mo. App. 375, 128 S.W. 1.

Defendant also argues, in connection with Count III, that its motion for a directed verdict should have been sustained because there was no evidence that the defendant acted maliciously, wilfully or wantonly. Plaintiffs' evidence was that the worst of the blasting occurred during the months of January, February, March and April, 1959, and that rocks and debris were thrown onto plaintiffs' premises approximately 35 or 40 times. Records kept by the Resident Highway Engineer, Pace, disclosed that blasting had occurred on 53 days during that period, but the records did not reflect the number of blasts set off each day, nor the total for all of that period. Defendant was made fully aware that the explosions were showering plaintiffs' property with rocks. That fact was discussed with defendant's superintendent, Martin, by plaintiff Thomas Arthur Smith, by Pace, and by Meyer, the State Highway Project Engineer, and there was evidence that employees of defendant would police plaintiffs' premises after some of the blasts. In fact, on one occasion plaintiff Smith complained to Martin that plaintiffs' house was being torn down, and Martin acknowledged: " * * * 'I know it. Every time I shoot I hit your house, * * * don't know what's wrong, but every time we shoot we hit your house.' "

Plaintiff Josephine Marie Smith testified that she talked to the defendant's employees who picked up the larger rocks, and showed them the damage that was being done. When she expressed concern about her own safety an employee advised her it would be better if she moved out of the house. She stated that there was no set pattern as to when the blasts would occur; that some would come every 15 or 20 minutes, while on other occasions a period of two hours would elapse. There was evidence that during the first half of the period no warnings were given and that during the last half warnings were given only at times. Mrs. Smith testified concerning the fear and anxiety she had for the safety of her children and herself, the strain and tension she suffered, and the effect on the children of being denied the use of the yard and of having to stay in the house. On one occasion when she was standing towards the back of the lot, she was struck by a small rock cast by the blasting. There was also evidence on the part of plaintiffs that the pole mats used to dampen the effects of the blasts became in a dilapidated condition and less effective, and that the defendant could have used smaller charges of explosives, which while more expensive would have caused less damage, and could have lessened the damage in other ways. The foregoing constituted ample evidence to submit to the jury the issue of whether defendant had acted maliciously, wilfully or wantonly, within the meaning of those terms, Brown v. Sloan's Moving & Storage Co., Mo., 296 S.W.2d 20; Nichols v. Bresnahan, 357 Mo. 1126, 212 S.W.2d 570; Voss v. American Mut. Liability Insurance Co., Mo.App., 341 S.W.2d 270, and the court properly overruled defendant's motion for a directed verdict.

Defendant's next point is that the court erred in giving plaintiffs' instruction No. 1, which defendant properly sets forth in the argument portion of his brief. Civil Rule 83.05(a), V.A.M.R. Complaint is made that the instruction did not follow Count I

of plaintiffs' petition in that the jury was not required to find that defendant's conduct had been wilful and wanton. This is a further result of defendant's misconception of the cause of action pleaded in Count I, already discussed. Instruction No. 1 related only to plaintiffs' claim for actual damages, based on defendant's blasting. The question of whether defendant had also acted maliciously, wilfully and wantonly was submitted in another instruction, and decided favorably to defendant.

The remaining assignments in defendant's brief relate to the alleged error in giving plaintiffs' instructions numbered 2, 3, 4 and 7, and the court's refusal to give defendant's offered instructions numbered 12, 14, 16, 17, 18 and 19. In disregard of Civil Rule 83.05(a), defendant has neither set forth those instructions in the argument portion of his brief, nor has he paraphrased or quoted any portions which he questions. While not required to do so, Brown v. Thomas, Mo.App., 316 S.W.2d 234, we have nevertheless examined all of the instructions in the light of the criticism leveled at them by defendant, at least as best we understand defendant's complaints. Most of the complaints made have been answered in the course of this opinion. We find no merit in the remainder.

Finding no error, it is the recommendation of the Commissioner that the judgment be affirmed.

PER CURIAM.

The foregoing opinion by DOERNER, C., is adopted as the opinion of the court.

Accordingly, judgment is affirmed.

ANDERSON, P. J., and WOLFE, J., concur.

RUDDY, J., not participating.